THE UNITED STATES, RESPONDENT, *v.* THOMAS SIMPSON, APPELLANT.

CRIMINAL LAW—POLYGAMY--EVIDENCE OF MARRIAGE.—In Utah Territory a marriage is complete when there is a full, free and mutual consent to a present marriage by parties capable of contracting, though not followed by cohabitation, and on an indictment for polygamy such a marriage may be proved by evidence of the deliberate admissions of defendant.

APPEAL from a judgment of the district court of the third district. The opinion states the facts.

*Mr. W. H. Dickson,* for respondent.

*Mr. C. O. Whittemore,* for appellant.

POWERS, J.:

The defendant was indicted in the third district court of this territory for polygamy, tried, convicted and sentenced to the penitentiary. The substantial averments of the indictment were that he intermarried with one Emma Ever-

ett, while at the same time his lawful wife, Hannah Powell Simpson, was living.

The court charged the jury that if the evidence convinced them, beyond a reasonable doubt, that the defendant married Emma Everett, as charged, and that at the same time he had a lawful wife living, then they should find a verdict of guilty, provided the jury further found that the first marriage was lawful. The jury was instructed that to establish the fact of marriage it is not necessary to produce a marriage certificate, or any record evidence, neither need eye-witnesses of the ceremony be sworn; that marriage may be proven like any other fact, by the deliberate declarations or admissions of the defendant, but that the defendant could not be convicted unless it was proved beyond a reasonable doubt that he was guilty as charged in the indictment. The jury were also informed that they were the sole judges of the credibility of the witnesses and of the weight to be given to the testimony.

The defendant urges that the court erred in charging the jury that they could infer marriage from the deliberate statements or admissions of the defendant.

None of the testimony is brought up with the record. We must, therefore, presume that there was evidence to sustain the charge that Hannah Powell Simpson actually existed, and that the marriage took place in this territory. In order to have arrived at a verdict of guilty, under the charge as given, the jury must have been convinced, beyond a reasonable doubt, that a lawful marriage had been entered into between this woman and the defendant.

In this territory there is no law regulating marriage. No form or ceremony is required, and no record of marriage is kept. Marriage is left as it was at common law, and a consensual marriage is in all respects valid. There need be no witnesses present. If the parties are competent to contract, all that is essential is a present agreement. The marriage is complete when there is a full, free and mutual consent by the parties capable of contracting, though not followed by cohabitation: *Caryolle* v. *Ferrie*, 26 Barb. 177; *Bunting* v. *Leppingwell*, 6 Coke

Rep. 29; *Jesson* v. *Collins,* 6 Mod. 155; *Fenton* v. *Reed,* 4
John. 52; *Jackson* v. *Winne,* 7 Wend. 47; *Hutchins* v.
*Kimmel,* 31 Mich. 130; *Graham* v. *Bennett,* 2 Cal. 503:
*Case* v. *Case,* 17 Cal. 598; *Rose* v. *Clark,* 8 Paige, 574;
*Com.* v. *Stump,* 53 Pa. St., 132.

Cohabitation is but one of the many incidents to the
marriage relation. It is not essential to it: *Murphy* v. *Ram-
sey,* 114 U. S. 42.

Under our law a marriage depends solely upon the
mutual consent of the contracting parties. They may
enter into the marriage relation secretly, and the fact may
be unknown to all save the man and woman.

As was said on the argument, a couple may meet on the
highway at any time in the day or night and there con-
tract a valid marriage. Whether it tends to good morals
to leave the matter thus loose, and completely at the will
of the parties, it is not for us to discuss. That is a
matter for the legislature. We have to take the law as
we find it.

No particular form or ceremony being essential, and
no witness being required, the question that arises is how
shall the fact of marriage be proven. Surely it is not
necessary to produce a marriage certificate, or record evi-
dence, for the law requires none. Clearly the ceremony
need not be proven by eye-witnesses; for a marriage is
valid without witnesses, and no ceremony is necessary.
If evidence of that nature were required people might trans-
gress the laws prohibiting polygamy with impunity. A
man could secretly marry as many women as he pleased,
and the law could not reach him.

Proof that two parties have treated each other as husband
and wife, have lived together as such, and have held each
other out to the world as such, is sufficient to enable a court
or jury to find that at some previous time the parties did,
as a fact, consent to be married; did, as a fact, agree to
be husband and wife. This is the conclusion of all the
decisions of authority. The previous actual consent or
agreement to be husband and wife is the ultimate and
essential fact the jury must find. The mode of life, the
holding out, the declarations or admissions of the accused,

and the like, are circumstantial evidence from which the fact may be inferred: 4 West Coast Rep. 51, note.

The conclusion at which we arrive is, that in order to prove the first marriage, on an indictment for polygamy, it is not necessary to produce eye witnesses to the ceremony.   Neither is it necessary to produce a marriage certificate or other record evidence.   Marriage may be proven by the declarations and admissions of the accused, and such declarations are proper to be considered by the jury as tending to prove an actual marriage.   If such declarations convince the jury, beyond a reasonable doubt, that the parties were married, that is all that is required: *United States* v. *Miles*, 2 Utah, 19; *Miles* v. *United States*, 103 U. S., 311.

While the instructions complained of might have been more carefully worded, still the charge, when taken as a whole, carefully guarded the rights of the defendant, and he was not injured thereby, and the judgment of the court below should be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.